# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DELAWARE COUNTY SAFE** | : | **CIVIL ACTION** |
| **DRINKING WATER COALITION, INC.,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KATHLEEN MCGINTY, Secretary of the** | : | |
| **Pennsylvania Department of Environmental** | : | **NO.  07-1782** |
| **Protection, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM AND ORDER

*GENE E.K. PRATTER, J.*                                          *NOVEMBER 27, 2007*

Plaintiff Delaware County Safe Drinking Water Coalition, Inc. (the "Coalition") sued the

Administrator of the Environmental Protection Agency ("EPA"), the Secretary of the

Pennsylvania Department of Environmental Protection ("PaDEP"), and Gary D. and Barbara

Creighton, seeking an injunction to prevent the PaDEP from issuing a National Pollutant

Discharge Elimination System ("NPDES") permit to the Creightons, and to suspend the

Commonwealth NPDES permitting program as a whole.  The Coalition also seeks an injunction

against the EPA to compel enforcement of its duties arising under the Clean Water Act of 1972,

33 U.S.C. § 1251, et seq. ("CWA").  In July, the Court dismissed all claims again the PaDEP and

the Creightons.  As a result, the Court found that the Application for a Preliminary Injunction

1

against the PaDEP would not be granted, leaving only the claims against the EPA.

Presently before the Court is the EPA's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons discussed below, the Court will dismiss the Coalition's claims against the EPA[1], and the Application for a Preliminary Injunction will not be granted.

I.   **FACTUAL BACKGROUND**

The Coalition is a Pennsylvania not-for-profit corporation comprised of members who are residents in Delaware County, Pennsylvania, and depend upon the local Crum and Ridley Creeks' water supply systems.  The Coalition is fairly characterized as a public interest group agitated by what it contends to be nearly 20 years of construction-related water pollution. According to the Coalition, this pollution has impaired the Crum Creek, and now threatens to do further damage to the remaining local waterbodies.

The Creightons are owners of a 37.65 acre plot of forested hillside and meadow-land in Delaware County.  According to the Coalition, this plot drains through a running tributary directly into the wetlands adjacent to the Ridley Creek.  On January 28, 2003, the Creightons applied to the Upper Providence Township Council for subdivision and land development review of their plans to construct 51 new, single-family homes on 52 subdivided lots.  On May 8, 2003,

---

[1]The Court heard oral argument on the motion to dismiss on November 1, 2007.  During the argument, the Coalition submitted additional documentary materials.  Because such materials were not part of the initial pleadings, given the present procedural posture of the litigation, the Court could not consider the substance of those submissions.  See Mortensen v. First Fed. Sav.s & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977) (noting that 12(b)(6) motions are decided based on the pleadings).  However, even if the Court had been procedurally permitted to do so, the materials were not relevant to the present issues.

2

the Council conducted a conditional use hearing and approved the conditional use permits and the preliminary subdivision plan.  Thereafter, on October 23, 2003, the Council approved the final subdivision plan subject to certain conditions.  The Creightons' Permit Application, No. PA I012303009, for an NPDES permit, was approved by the PaDEP on September 28, 2007, and PaDEP issued a permit to the Creightons the same day.

The Coalition maintains that the EPA has violated federal law by way of the Agency's ongoing inaction toward environmental degradation in Pennsylvania. The Coalition claims that the EPA has violated the CWA by failing to perform a number of mandatory duties, including not exercising emergency powers to halt the Creightons' permit application process, not enforcing the Commonwealth's anti-degradation policy, and not disapproving the PaDEP biennial listing of impaired waters.  In addition, the Coalition asserts that the EPA has failed to establish ELGs, NSPSs, and best available control technology for the construction industry and failed to withdraw approval of the PaDEP program for permitting construction activities in the vicinity of public water supplies.

The EPA has filed a motion to dismiss the Coalition's claims against it under Rule 12(b)(1) and 12(b)(6) on the grounds that the Coalition has failed to assert claims that are within the jurisdictional grant of the CWA, and has failed to assert a cognizable constitutional right, or deprivation of such a right.

## II.   LEGAL STANDARD

Rule 12(b)(1) provides that a party may bring a motion to dismiss for lack of subject matter jurisdiction.  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.

1977).  "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  Ballentine v. U.S., 2006 WL 3298270, at *1 (D.V.I. Sept. 21, 2006) (citing St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands, 218 F.3d 232, 240 (3d Cir. 2000); Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 733 (3d Cir. 1970)).

Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party, here, the Coalition.  See Warth v. Seldin, 422 U.S. 490, 501 (1975). Where a federal court's jurisdiction is at issue, a court may look beyond the pleadings to satisfy itself as to the existence, or nonexistence, of jurisdiction.  Mortensen, 549 F.2d at 891.  Where the court finds that it lacks jurisdiction over the subject matter of a claim, it must be dismissed.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

With respect to a dismissal pursuant to Rule 12(b)(6), for failure to state a claim, the burden is on the party moving for a dismissal.  Thus, the Court must again accept as true all well-pleaded allegations in the complaint, and view them in the light most favorable to the plaintiff Coalition.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). A 12(b)(6) motion will only be granted when it is certain, under any set of facts that could be proved by the plaintiff, that no relief could be granted.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

**III.     CITIZEN-SUIT AGAINST THE EPA UNDER THE CLEAN WATER ACT**[2]

At its core, this dispute raises questions regarding the division of the duties and enforcement powers among the EPA and the states, and the jurisdiction of the Court to intervene and provide a remedy to the resulting disputes.[3]

The CWA provides for private enforcement of its provisions through the availability of a "citizen suit."  Section 505(a)(2) authorizes actions against the EPA in federal district courts when a plaintiff alleges that the EPA has failed to perform a nondiscretionary duty under the CWA. This Section permits only one judicial remedy: an order requiring the EPA "to perform such [nondiscretionary] act or duty."  33 U.S.C. § 1365(a)(2).  No actions may be commenced under the statute until 60 days after a plaintiff has given notice of the alleged violation and its intent to sue.  Id. § 1365(b).  EPA regulations require that notice of such nondiscretionary duty suits must be served on the EPA Administrator with a copy mailed to the United States Attorney General.  40 C.F.R. § 135.2(b).  The notice "shall identify the provision of the Act which requires such act or creates such duty [and] shall describe with reasonable specificity the action taken or not taken by the Administrator which is alleged to constitute a failure to perform such act or duty...."  Id. § 135.3(b).

The Coalition asserts that Pennsylvania's NPDES program is a "defective" and "illegal"

---

[2]These claims are set forth, and incorporated by reference within, Count III of the Coalition's Amended Complaint and described in paragraphs I.(B)(i)-(v) and I.(D) of that pleading.

[3]The Court set forth in detail the statutory scheme of the CWA in the related opinion, Delaware County Safe Drinking Water Coalition v. McGinty, 2007 U.S. Dist. LEXIS 55327 *9-21 (E.D. Pa. July 31, 2007), which need not be repeated here except as specifically related to the Coalition's articulated claims against the EPA.

regulatory system as a whole, and that the PaDEP has committed specific violations of the CWA with respect to the Creightons' Permit Application.  The Coalition asserts that the EPA has failed to respond appropriately to illegalities, according to the Coalition, committed by the Commonwealth.  Specifically, the Coalition maintains that the EPA has not performed non-discretionary duties under the CWA, to wit, failing to provide mandatory effluent limitation guidelines and new source performance standards for the construction industry, failing to suspend PaDEP permit applications under NPDES, failing to enforce an anti-degradation policy for the Commonwealth, failing to disapprove the Pennsylvania biennial listing of impaired waters, and failing to withdraw approval for the PaDEP program allowing construction activities in the vicinity of public water supplies.  See Amended Compl. ¶¶ I.(B)(i)-(v).

### A.    The EPA Does Not Have a Non-Discretionary Duty to Initiate Enforcement Action under the CWA

To pursue a citizen suit under the CWA, a plaintiff must identify "a failure of the [EPA] Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2).  The EPA maintains that the Coalition has failed to identify any non-discretionary duty under which the Administrator could be subject to a citizen suit.[4]

---

[4]The EPA also argues that prior to filing its citizen suit, the Coalition failed to provide the explicit, 60-day notice expressly required under § 505(B) of the CWA.  See 33 U.S.C. § 1365(b). The CWA notice requirement allows potential defendants to identify violations or unfulfilled duties, and to avoid costly lawsuits by bringing themselves into compliance without court action. Hallstrom v. Tillamook County, 493 U.S. 20, 29-30 (1989) (interpreting a nearly identical provision of the Resource Conservation and Recovery Act).  "[N]otice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit."  Atlantic States Legal Found., Inc. V. Stroh Die Casting Co., 116 F.3d 814, 819-820 (7th Cir. 1997).  Failure to provide sufficient notice precludes a plaintiff from pursuing its lawsuit under the CWA and is not subject to cure.  See Hallstrom, 493

It is a bedrock principle of administrative law that agency enforcement decisions are presumptively "committed to an agency's absolute discretion." Heckler v. Chaney, 470 U.S. 821, 831 (1985).  The courts of appeals have unanimously applied this principle to find that federal enforcement authority under the CWA is discretionary.  E.g., Harmon Cove Condo. Ass'n v. Marsh, 815 F.2d 949, 952-53 (3d Cir. 1987); Sierra Club v. Whitman, 268 F.3d 898. 904-06 (9th Cir. 2001); Dubois v. Thomas, 820 F.2d 943, 947-48 (8th Cir. 1987); Sierra Club v. Train, 557 F.2d 485, 491 (5th Cir. 1977).

The EPA argues that the CWA provisions relied upon by the Coalition "provide EPA with enforcement discretion that is unreviewable under the citizen suit provision."  Motion at 18. The Coalition relies on 33 U.S.C. § 1364 to support its arguments, but the EPA rightly notes that the provision says that Administrator "may bring suit on behalf of the United States."  33 U.S.C. § 1364(a) (emphasis added).  The court in Comm. for Consideration of Jones Falls Sewage Sys. v. Train, 387 F. Supp. 526, 529 (D. Md. 1975), considered the discretionary language in § 1364 and the traditional discretion granted to the executive branch to decide whether or not to prosecute.  The court determined that "the exercise of these emergency powers by the Administrator is discretionary."  Id.  As such, the court held that the EPA was *not* subject to a CWA citizen suit for failing to take action under 33 U.S.C. § 1364.

The Coalition argues in paragraph B.I.iii of its Amended Complaint that the EPA has a

---

U.S. at 27.

Here, the Coalition provided specific notice in a letter dated January 17, 2007, which dealt with only one alleged violation: failure of the EPA to exercise its emergency powers under 33 U.S. C. § 1344(c) to veto permits for discharges.  However, given the other issues addressed in this Memorandum, the Court declines to dismiss the case based on the Coalition's alleged shortcomings pursuant to the notice requirement.

"mandatory duty to enforce" Pennsylvania's anti-degradation policy.  Such language is

ambiguous, but the EPA's interpretation of the provision seems entirely appropriate: "the

Coalition apparently seeks to have the EPA take enforcement action or to override PaDEP's

permitting authority to ensure that Pennsylvania's antidegradation requirements are met."

Motion at 19.  Again, this permitting authority is discretionary, not mandatory, so that the

decision of the EPA as to whether to take such action is not reviewable through the CWA's

citizen suit provision.  See Sierra Club v. Whitman, 268 F.3d at 904-06 (holding that the EPA

has no non-discretionary duty to initiate enforcement actions under 33 U.S.C. § 1319); Dist. of

Columbia v. Schramm, 631 F.2d 854, 860 (D.C. Cir. 1980) (finding that EPA decision not to

review or veto a state's action on an NPDES permit application is committed to agency

discretion by law and not reviewable in district court).

The Coalition relies on The Raymond Proffitt Found. v. EPA, 930 F. Supp. 1088 (E.D.

Pa. 1996) to support its position.  But Raymond Proffitt involved a completely different set of

facts.  In Raymond Proffitt, the court ordered the EPA to prepare and publish antidegradation

standards for Pennsylvania after the EPA disapproved the standards prepared by the

Commonwealth and gave the Commonwealth 90 days to adopt changes proposed by the EPA.[5]

The court acted under the 33 U.S.C. § 1313(c)(4), which provides that the EPA "shall promptly"

act in such a situation.  The case at hand is distinguishable from Raymond Proffitt because here

the EPA has not disapproved the Commonwealth's standards and thus has no non-discretionary

---

[5]The EPA notes that it has since prepared and published antidegradation standards for
Pennsylvania.  See Motion at 19, n.9.  The Coalition does not dispute this assertion.

duty to either force the Commonwealth to act or to prepare and publish its own antidegradation standards for Pennsylvania.

**B.     Section 404(c) of the CWA Does Not Apply to Section 402 Permits**

The Coalition contends that the EPA has a non-discretionary duty to suspend or veto the Creightons' Permit Application under 33 U.S.C. § 1344(c).  However, this CWA provision applies solely to "dredged or fill material" in disposal sites under the authority of the Secretary of the Army, acting through the Army Corp of Engineers.  See 33 U.S.C. § 1344(a)-(d).  The Permit Application at issue in this case was submitted under the NPDES program pursuant to section 402 of the CWA, 33 U.S.C. § 1342.  Therefore, the Coalition's reliance on 33 U.S.C. § 1344(c) is unsuccessful.[6]

**C.     The CWA Does Not Create a Non-Discretionary Duty for the EPA to Withdraw a State's NPDES Program**

The Coalition asserts that the Administrator has a mandatory duty to withdraw Pennsylvania's NPDES program.  In arguing that the duty is mandatory, the Coalition relies on 33 U.S.C. § 1391(a)(2) and 1342(c) which set forth standards and procedures for EPA withdrawal of state NPDES programs.  These provisions state that the EPA "shall" initiate proceedings to withdraw the state program if the EPA finds that the state is not appropriately implementing the CWA; however, neither provision imposes a non-discretionary duty on the

_____

[6]Even if this provision applied to this case, courts have repeatedly found that 33 U.S.C. § 1344(c) imposes no non-discretionary duty on the EPA. See, e.g., Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 87 F.3d 1242, 1249-50 (11th Cir. 1996) ("We agree with the EPA that this power is discretionary.  By statute, the Administrator is authorized rather than mandated to overrule the Army Corps of Engineers. 33 U.S.C. § 1344(c).  Because this power is discretionary, the citizen suit provision of the Clean Water Act does not apply.").

EPA to find such a state program insufficient.

A significant majority of courts have found that the CWA does not create a non-discretionary duty for the EPA to withdraw state NPDES programs.  Sierra Club v. U.S. E.P.A., 377 F. Supp. 2d 1205, 1209 (N.D. Fla. 2005) ("the better reasoned district court decisions specifically addressing § 1342(c)(3) have held that it does not impose on EPA a mandatory duty to withdraw a state's NPDES authority."); Johnson County Citizen Comm. For Clean Air and Water v. U.S. E.P.A., 2005 U.S. Dist. LEXIS 33190 *11 (M.D. Tenn. Sep. 9, 2005) ("This Court agrees with the majority view and finds that, under the plain terms of the CWA, and considering the legislative history viewed as a whole, the decisions of whether to hold a public hearing and whether to make a subsequent determination that a state is not administering its NPDES program in accordance with the CWA are wholly discretionary exercises of EPA authority."); Weatherby Lake Improvement Co. V. Browner, 1997 U.S. Dist. LEXIS 14741 *3Z (W.D. Mo. Apr. 17, 1997) ("The plain language of 33 U.S. C. § 1319(a)(2) and § 1342(c)(2) and (3), as embodied in Section 402(c) of the Clean Water Act, does not compel the Administrator to investigate complaints or to make findings of violations which would then force EPA to withdraw [the state's] authority to administer a state NPDES program.").

Clearly, the court in Save the Valley, Inc. v. EPA, 99 F. Supp. 2d 981 (S.D. Ind. 2000), reached the opposite conclusion.  There, the court found that 33 U.S.C. § 1342(c)(3) creates a non-discretionary duty.  Id. at 984-86.  However, the Tenth Circuit Court of Appeals expressly rejected this holding as going against the vast weight of authority on the matter.  Amigos Bravos v. EPA, 324 F.3d 1166, 1171 (10th Cir. 2003) ("Despite the 'he shall' language, the weight of authority is that § 309(a)(3) does not impose a mandatory duty on the Administrator.").  In

addition, <u>Save the Valley</u> wrongly alleges that a citizen who wishes to force withdrawal of a state

NPDES program would have no remedy if denied jurisdiction in the district courts.  99 F. Supp.

2d at 985.  In actuality, a citizen wishing to force EPA withdrawal of a state program may file an

administrative petition with the agency, then, in the event of an unfavorable response, challenge

the decision in the appellate court under CWA section 509(b)(1), 33 U.S.C. § 1369(b)(1).  <u>See</u>

Tr. 11/1/07 at 20.3-21.1.  Accordingly, the EPA has no non-discretionary duty to withdraw

approval of state NPDES programs.

> **D.    The CWA Does Not Create a Non-Discretionary Duty for the EPA to Disapprove of a State Listing of Impaired Waters**

The Coalition claims that the EPA has failed to disapprove, "as mandated by" section

303(d)(2) of the CWA, 33 U.S.C. § 1313(d)(2), 40 C.F.R. § 130.7(d)(2),  Pennsylvania's biennial

listing of impaired waters.  Compl. ¶ I.B.iv.  However, Section 303(d)(2) calls for the agency to

"either approve or disapprove" a state's biennial list no later than 30 days after submission.  33

U.S.C. § 1313(d)(2).  Nowhere does the statute require *disapproval* of the state list. The approval

or disapproval of the list "is a quintessential question of EPA discretion."  <u>See</u> <u>Farmers Union</u>

<u>Cent. Exch., Inc. v. Thomas</u>, 881 F.2d 757, 761 (9th Cir. 1989) (discussing EPA discretion in

relation to the Clean Water Act: "Absent some provision requiring EPA to adopt one course of

action over the other, we can only conclude that EPA's choice represented an exercise of

discretion....EPA is under no nondiscretionary duty not to abuse its discretion.").[7]  Therefore, the

_____

[7]The Court acknowledges that a citizen may invoke the Administrative Procedure Act
("APA") to challenge EPA approval of a state listing of impaired waters.  The APA requires a
reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to
be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  5
U.S.C. § 706(2)(a).  However, while the Coalition fleetingly mentions the APA in its Complaint,

EPA has not failed to perform some mandatory duty in this regard, but rather has chosen not to

act on its discretionary powers.

IV.     **The Court of Appeals Has Exclusive Jurisdiction over the Coalition's Challenge to the EPA's regulatory Decision Not to Issue Certain Standards for the Construction Industry**

The Coalition alleges that the EPA failed "to identify the best practicable

control...technology currently available or to provide mandatory effluent limitation guidelines

("ELGs") and new source performance standards ("NSPSs") in respect of the construction

industry."  Amended Compl. ¶ B.I.i.

This claim is not a non-discretionary duty claim, however, because in this claim the

Coalition is not challenging the EPA's failure to take some action.  Rather, the claim is a

challenge to the EPA's affirmative decision not to establish ELGs, NSPSs, and "best available"

control technology for the construction industry.  The EPA announced this decision in a final

action statement that the EPA was withdrawing its proposal to establish ELGs, NSPSs, and the

"best available" control technology for the construction industry.  69 Fed. Reg. 22,472 (Apr. 26,

2004).  Because the Coalition is challenging the EPA's final decision with respect to the

promulgation of effluent guidelines, as discussed below, this specific challenge falls within the

---

it has not made a challenge under the APA in this case.  See Tr. November 1, 2007 at 16-17.
Therefore, the Coalition cannot rely on the APA-related cases cited in its Brief.  See Friends of
Wild Swan v. U.S. E.P.A., 74 Fed. App'x 718 (9th Cir. 2003) and American Littoral Society v.
U.S. E.P.A., 199 F.Supp. 2d 217, 234 (N.J. 2002).

exclusive jurisdiction of the court of appeals pursuant to CWA section 509(b)(1), 33 U.S.C. § 1369(b)(1).[8]

The CWA creates two distinct means of challenging EPA action or inaction.  First, the citizen suit provision allows suit in district court to compel EPA action "where there is alleged a failure to perform any act or duty which is not discretionary with the Administrator."  33 U.S.C. § 1365(a)(2).  Second, CWA section 509(b)(1) "places exclusive judicial review of certain EPA actions within the exclusive jurisdiction of the courts of appeals."  See 33 U.S.C. § 1369(b)(1).

The Supreme Court has construed section 509(b)(1) broadly to avoid creating "an irrational bifurcated system" of judicial review of EPA actions.  Crown Simpson Pulp Co. v. Costle, 445 U.S. 193, 197 (1980).  The Third Circuit Court of Appeals followed Crown Simpson in adopting a broad interpretation of section 509(b)(1).  The court found that "where...a statute allows for some appellate review of agency action, ... jurisdictional provisions should be construed generously absent clear and convincing evidence of a contrary congressional intent," and that direct review in the courts of appeals is generally preferred to initial district court review."  Modine Mfg. Corp. v. Kay, 791 F.2d 267 (3d Cir. 1986).  The court reiterated this conclusion in Vineland Chemical Co., Inc. v. U.S. E.P.A., 810 F.2d 402, 405 (3d Cir. 1987), where it stated that "statutes authorizing review of specified agency actions" should be construed

---

[8]Section 509(b)(1) provides that:
> review of the Administrator's action...(E) in approving or promulgating any effluent limitation or other limitation under section 301, 302, 306, or 405 [of the CWA]...may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business which is directly affected by such action upon application by such person.

33 U.S.C. § 1369(b)(1).

broadly in favor of appellate review to avoid "unintended and anomalous results."

Had the EPA adopted the proposed effluent limitations guidelines and new source performance standards for the construction industry, any challenge would plainly have fallen within the court of appeals' exclusive jurisdiction under section 509(b)(1)(E).  As a result, the agency's affirmative decision (following the completion of the required notice and comment process) not to promulgate those standards also must be reviewed by the court of appeals. "Because EPA's decision was the direct result of a notice and comment rulemaking process where the issue of promulgating these standards was specifically at issue, it is an EPA 'action...in approving or promulgating [an] effluent limitation' that may only be reviewed in the courts of appeals."  Motion at 27.  Quoting 33 U.S.C. § 1369(b)(1)(E); see Str. For Auto Safety v. Nat'l Highway Trans. Safety Admin., 710 F.2d 842, 845-46 (D.C. Cir. 1983) (holding that withdrawal of a proposed rule is a rule for purposes of determining whether the court of appeals has jurisdiction since it indicates an agency's policy as to its exercise of statutory discretion).

This Court lacks jurisdiction to hear any challenge to the EPA's decision not to identify the best practicable control technology currently available or to provide mandatory effluent limitation guidelines ("ELGs") and new source performance standards ("NSPSs") in respect of the construction industry.  As such, any such challenge must be brought in the Court of Appeals for this Circuit.

V.      SECTION 1983 CLAIMS AGAINST THE EPA[9]

The Coalition has withdrawn claims against the EPA advanced pursuant to the Civil

Rights Act, 42 U.S.C. § 1983.[10]

VI.     CONCLUSION

For the foregoing reasons, the Court will grant the EPA's motion and dismiss Counts III

and IV pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.


                                    BY THE COURT:


                                    S/Gene E.K. Pratter
                                    GENE E.K. PRATTER
                                    UNITED STATES DISTRICT JUDGE

---

[9]These claims are set forth, and incorporated by reference within, Count IV of the Coalition's Amended Complaint.

[10]The Coalition acknowledges that the EPA is exempt from liability to suit under 42 U.S.C. § 1983.  (Plaintiff's Brief p.25) ("The Administrator claims exemption from liability to suit under 42 U.S.C. § 1983, and he is indeed correct, the inclusion of this (in Count IV) was an oversight born of attempted symmetry.").  See also Tr. November 1, 2007 at 25.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DELAWARE COUNTY SAFE** | : | **CIVIL ACTION** |
| **DRINKING WATER COALITION, INC.,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KATHLEEN MCGINTY, Secretary of the** | : | **NO.  07-1782** |
| **Pennsylvania Department of Environmental** | : | |
| **Protection, et al.,_____** | : | |
| | : | |
| **Defendants.** | : | |

**ORDER**

      **AND NOW**, this 27th day of November 2007, **IT IS HEREBY ORDERED** that the

Motion to Dismiss filed by the Administrator of the United States Environmental Protection

Agency (Docket No. 20) is **GRANTED**, and the remaining **Counts III** and **IV** of the Amended

Complaint are dismissed in their entirety.

      The Clerk of Court shall CLOSE this case for all purposes, including statistics.


                              BY THE COURT:


                              S/Gene E.K. Pratter
                              GENE E.K. PRATTER
                              UNITED STATES DISTRICT JUDGE